Sedalia Brewing Co. v. Sedalia Water Works Co.

THE SEDALIA BREWING COMPANY, Appellant, v. THE SEDALIA WATER WORKS COMPANY, Respondent.

Kansas City Court of Appeals, February 4, 1889.

1. **Injunction**: WHEN GRANTED. In this state it is not essential that the injury threatened shall be irreparable, to warrant a resort to an injunction ; nor that the defendant should in all cases be insolvent ; it is sufficient, if an adequate remedy cannot be afforded by an action for damages.

2. ———: CITY ORDINANCE: CONTINUOUS DUTIES: SPECIFIC PERFORMANCE. The fact that the contract in question may be based on a city ordinance, or that the rights claimed may, in a degree. be held under such ordinance, or that under such contract, continuous duties arise does not prevent the aid of an injunction ; and this, too, although equity might not in the given case, decree the specific performance of the contract.

3. ———: MANDATORY: EQUITY PRACTICE. The fact that the injunction in this case is mandatory in character, though not in form, and will have the effect to compel the defendant to continue to furnish plaintiff water under the contract, will not bar the writ, as, by an equity practice existing in England and this country, the courts while refraining from ordering the doing of an affirmative act, or, by its process, directing the specific performance of a contract, will, nevertheless, oy an indirect method effect the same result.

4.  Contracts : OBJECT OF INTERPRETATION OF : ACTS AND CONDUCT OF PARTIES : RULE AS TO. The chief object in the interpretation of contracts in any wise ambiguous, is to get at the intention of the parties who made them. And if this can be ascertained by the acts and conduct of the parties, such interpretation should prevail. More especially should their acts control the meaning to be given when they have construed the ambiguous matter by actually carrying it out in a certain manner. This latter is as much an ascertainment of intention, as if the parties had so written it down.

5.  ———— : RULE APPLIED. The contract between the parties hereto required the defendant, on certain conditions, to furnish the plaintiff water " for actual brewing purposes alone " and the accounting and settlements between the parties for nearly three years proceeded on the basis that said provision did not simply mean, the water actually used in the beer brewed, but that it included all the use of water properly connected with brewing beer ; held, no room is left to doubt the understanding the parties had of the meaning of the words "actual brewing purposes alone."

*Appeal from the Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

Statement by the court.

This is a proceeding in equity by injunction brought by the Sedalia Brewing Company against the Sedalia Water Works Company to enjoin the latter from cutting off the supply of water to the former. On February 19, 1884, the brewing company entered into a contract with the city of Sedalia, then the owner of the water works system in that city, by which it was agreed that the brewing company would lay a main from the nearest point to its brewery at its own expense and that in consideration therefor the brewery should receive water at the brewery for brewing purposes alone, at the rate of five cents for every barrel of beer brewed. In pursuance of this agreement embodied in an ordinance duly passed, the pipe was laid to the brewery. On May 1, 1887, the city sold its water works

and system to Quigley & Company, who sold to the Inter-State Gas and Water Company, who in turn sold to the present defendant, the Sedalia Water Works Company. During this interval the brewing company used water at their brewery for all purposes connected with the brewery, and the water commissioners and the city council settled with the company, and credited them on the expense of laying the main, which was $1227.60, with an amount equal to five cents for every barrel of beer brewed, or $508.75.

The ordinance of sale of the water works to the original purchasers required that they and their successors should carry out this contract with the brewing company. The water company on taking charge of the works refused to furnish water to the brewing company under the latter's contract with the city, and insisted that a meter be put in and regular rates be paid, and threatened to cut off the brewery if this was not done. The brewery claimed that there was still due it in water, at the rate of five cents for every barrel of beer brewed, the difference between $1227.60, the cost of laying the pipe, and $508.75, the amount already used, and that the water company should continuously furnish them water at this rate, and that they had a right to use it for all purposes in the brewery. This the water company refused and denied.

The evidence disclosed that shutting off the water supply necessarily stopped the operation of brewing beer ; that no other mode of getting a supply was at hand ; that the brewery manufactured between three and four thousand barrels of beer yearly, and that plaintiff had built up a regular trade for it throughout the country ; that such trade would be lost and in the strength of competition could not be regained ; that no proper or certain estimate of damage could be made.

*George F. Longan* and *Charles E. Yeater*, for appellant.

(1) It is not necessary to show that the injury threatened is irreparable. It is sufficient if there is no adequate remedy by an action for damages. *Harris v. Township Board*, 22 Mo. App. 462; *Bank v. Kercheval*, 65 Mo. 682; *Towne v. Bowers*, 81 Mo. 491; *Railroad v. City*, 85 Mo. 674; *McPike v. West*, 71 Mo. 199. (2) Equity will interfere to protect and secure the enjoyment of a franchise or rights of a like character acquired under city ordinances. *Railroad v. City*, 85 Mo. 674; *Railroad v. Railroad*, 69 Mo. 65; *Railroad v. Kansas City*, 29 Mo. App. 99; *Milhan v. Sharp*, 27 N. Y. 620; *City v. Bull*, 106 Ill. 337; Dillon Mun. Corp. [2 Ed.] sec. 728, note 1. (3) The proper construction to be put upon the contract and ordinance between the city and the brewing company is that which was understood and agreed to between the original parties, and the continuous conduct of the original parties acting under the ordinance is evidence of what that understanding and agreement was, which was that the words, "for actual brewing purposes alone," should be considered to mean such a use of water as is necessary not only to enter into the composition of the beer itself, but such as is requisite to the ordinary operation of a brewery and the various purposes for which water is demanded in such operation. *Mathews v. Danahy*, 26 Mo. App. 661; *Gas Light Co. v. City*, 46 Mo. 128; *Patterson v. Camden*, 25 Mo. 21; *Lumber Co. v. Warner*, 93 Mo. 384; *Edwards v. Smith*, 63 Mo. 119. (4) It can be no objection in this proceeding that continuous duties arise out of the contract and ordinance which requires that the city and its successor, the water works company, shall furnish water to the brewing company until the cost of laying the main is exhausted at the rate of five cents per barrel, and afterwards at the

same rate, nor that the contract is uncertain, if the court is able from the parol evidence to formulate what the agreement and understanding was. *Chouteau v. Railroad*, 22 Mo. App. 299 ; *Tel. Co. v. Railroad*, 3 Fed. Rep. 434 ; *Tel. Co. v. Railroad*, 3 Fed. Rep. 429 ; High on Injunctions, sec. 1109.

*W. S. Shirk*, for respondent.

(1) Plaintiff's petition does not state facts sufficient to entitle plaintiff to an injunction. It does not state facts which show that he has no adequate remedy at law. High on Injunctions, sec. 35, and authorities. (2) The pleadings and the evidence show that a dispute existed as to the proper interpretation of the contract between the city of Sedalia and plaintiff ; also that the city of Sedalia claimed that plaintiff's pipe had been fully paid for ; that plaintiff refused to come to any settlement with the city, but demanded that its brewery should be supplied with water according to its interpretation of the contract, and until it had been paid for the pipe according to its account of water received. Equity will not enforce such doubtful and disputed rights or claims, by injunction. High on Injunctions, secs. 695, 696, 708 and authorities ; *Chouteau v. Railroad*, 22 Mo. App. 299. (3) Upon a full hearing, the circuit court dissolved the temporary injunction and dismissed plaintiff's bill. (4) The court correctly interpreted the contract, after hearing evidence as to the meaning of the term "actual brewing purposes alone." And the court was most liberal in admitting the character of evidence it heard, against defendant's objection. To have decided that water for "actual brewing purposes alone," meant water for steam boilers, washing out the brewery, washing beer barrels, bottles and kegs, washing off its wagons, watering its horses, and in the private dwellings of its employes, would have been absurd and

ridiculous. The court found that water had been used for these purposes, outside the terms of the contract, and this court will not disturb that finding.

ELLISON, J.—Before discussing the evidence which has been presented to us for review, we will consider one or two legal questions which occur in the cause.

I.  We determined in *Harris v. Township Board*, 22 Mo. App. 465, on ample authority therein cited, that "in this state it is not essential that the injury threatened shall be irreparable, to warrant a resort to an injunction;" nor that the defendant in all cases should be insolvent; it is sufficient if "an adequate remedy cannot be afforded by an action for damages." We are of the opinion that so far as concerns this branch of the case, plaintiff is entitled to the writ.

II.  The fact that the contract in question may be based on the city ordinance mentioned, or that the rights claimed by plaintiff may, in a degree, be held under the city's ordinance, does not prevent the exercise of the court's equity powers by the process here sought. *Springfield Railway Co. v. City of Springfield*, 85 Mo. 674. Neither does the fact that, under the contract, continuous duties arise prevent aid from this writ, although equity might not, in the given cases, decree its specific performance. *Chouteau v. The Union Railway Co.*, 22 Mo. App. 286.

III.  It will be observed that the injunction prayed is mandatory in character, and while the form of the order sought may not be so, the effect of the writ will be to compel defendant to continue to furnish water under the contract. This, however, will' not bar the writ in a case otherwise showing the party entitled to relief. It seems that by an equity practice existing in England and in this country, the courts, while refraining from ordering the doing of an affirmative act, or, by

its process, directing the specific performance of a contract, will nevertheless, by an indirect method, effect the same result. Thus in *Cooke v. Chilcott*, 3 Ch. D., 694, the chancellor says that: "This case is one seeking for the performance of works which are required to last a long time, and therefore an injunction expressly ordering the work to be done cannot be granted. But the defendant is subject to the obligation of laying down certain pipes and supplying water to the plaintiffs, and those pipes he must lay down and that water he must supply ; and though I cannot directly make him lay down the pipes, I can and will make an order by means of which he will be guilty of contempt of court if he does not lay them and provide the supply of water."

So in *Lane v. Newdigate*, 10 Ves. 192, Lord Chancellor ELDON used this language, in speaking of a stop-gate : "The question is, whether the court can specifically order that to be restored. I think I can direct it in terms that will have that effect. The injunction I shall order will create the necessity of restoring the stop-gate ; and attention will be had to the manner in which he is to use these locks ; and he will find it difficult, I apprehend, to avoid completely repairing these works." This practice was reviewed in exhaustive opinions by FIELD and SAWYER, JJ., in the *C. S. M. Co. v. The Virginia & Gold Hill Water Co.*, 1 Sawy. [ U. S. C. C. ] 470, and s. c., *Ib.*, 685.

IV.   Much of the contest between the parties to this cause has been over the meaning which should be given to that clause in the contract providing for the use of water at the brewery "for actual brewing purposes alone," at the rate of five cents for each barrel of beer manufactured.   The defendant contends that this means the water which actually enters into the barrel of beer brewed ; while the plaintiff claims that it includes all use of water connected properly with brewing beer ;

such as for the boiler, washing out vats, beer barrels, tubs, kettles, etc.

The chief object in the interpretation of contracts, which are in any wise ambiguous, is to get at the intention of the parties who made them. And if this can be ascertained by the act, and conduct of the parties, such interpretation should prevail. More especially should their acts control the meaning to be given when they have construed the ambiguous matter by actually carrying it out in a certain manner. This latter is as much an ascertainment of intention as if the parties had so written it down. A very able and instructive opinion was written by Judge BLISS in *The St. Louis Gas Light Co. v. City of St. Louis*, 46 Mo. 121, he says : "Nor should any regard be paid to loose declarations or equivocal or isolated acts, but the continuous conduct of the parties for a series of years concerning the subject matter of the contract, and in fulfillment of its conditions— every act pointing in the same direction—may make their understanding as clear as by the greatest precision of language." Now the water account was kept by the water commissioner for the city of Sedalia and it shows the city to be charged with $1227.60 for the construction of the water main by the brewery company, and credited by water consumed at the brewery in the aggregate sum of $508.75. This credit is made up of separate entries at the first of each month for a period of nearly three years, beginning September 1, 1884, and ending May 1, 1887. These entries were made by the water commissioner with the knowledge of the extent of the consumption of water by the brewery and at each entry of a monthly credit to the city, he took as the basis of his calculation of the amount, the number of barrels of beer manufactured that month. So we have a practical and actual interpretation of this contract evidenced by what may be termed monthly settlements, extending through a period of thirty-three months. No room is

left to doubt the understanding the parties had of the meaning of the words " actual brewing purposes alone." That meaning, as interpreted and acted upon by them, is, that the plaintiff is to be furnished with water at the brewery to be used for the purpose of brewing or manufacturing beer, that such use includes water properly connected with brewing beer, such as for cleaning the brewery, for use in the boiler, washing out vats, beer-barrels, tubs, kettles, and other things connected with the brewery.

Some evidence was introduced tending to show the use of water at a private house; this is not properly within the limit of the contract under the evidence, and if such has been done, it should cease.

We shall therefore reverse the judgment and remand the cause, with directions to the circuit court, by proper order, to restrain defendant from cutting off plaintiff's supply of water for the uses herein indicated. All concur.