The Egyptian Packing Co. v. The Olney Gas Co., 183 Ill. App. 447.

# The Egyptian Packing Company, Appellant, v. The Olney Gas Company, Appellee.

1. CORPORATIONS, § 331*—*duty not to discriminate in service.* It is the duty of a public service corporation to furnish its commodity or service without arbitrary discriminations.

2. GAS, § 8*—*duty not to discriminate.* The business of a gas company furnishing gas to domestic consumers and manufacturers is one impressed with a public interest, and it must serve all who apply upon equal terms and at reasonable rates.

3. GAS, § 8*—*when duty to supply is within corporate duties.* The undertaking of a gas company to supply a manufacturer with gas for its boilers without detriment or inconvenience to the company's domestic consumers is within its common law duties.

4. INJUNCTION, § 72*—*when shutting off water will be enjoined.* Injunction will lie to restrain persons engaged in a public service from shutting off water in violation of its contract where it would result in great injury to the consumer, and the injunction will not be denied because the ultimate effect of it would be to compel the company to comply with its contract.

5. ESTOPPEL, § 53*—*when gas company cannot repudiate direction to buy coal.* A gas company not obligated by contract to furnish coal to supply boilers where there is an insufficient supply of gas, voluntarily directed the owner of the boilers to purchase coal at its expense and the owner did so in reliance upon such direction, *held*, that the company is estopped from repudiating its liability for the sum paid for coal.

6. INJUNCTION, § 177*—*when bill against gas company is sufficient.* The averments of a bill for an injunction by a manufacturer that a gas company contracted to supply gas for boilers, that by reason of an insufficient supply complainant was directed to purchase coal at defendant's expense and deducted the sum so paid from the contract charge, that it was ready to pay the balance due, that defendant threatened to cut off the supply on the false assumption of nonpayment of its bill, and that serious injury would result therefrom, justify enjoining defendant from shutting off such supply of gas as it must give, and the bill is not demurrable.

Appeal from the Circuit Court of Richland county; the Hon. WILLIAM H. GREEN, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded with directions. Opinion filed June 10, 1913.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

448     APPELLATE COURTS OF ILLINOIS.

The Egyptian Packing Co. v. The Olney Gas Co., 183 Ill. App. 447.

JOHN LYNCH, for appellant.

JOHN A. MACNEIL, for appellee.

PER CURIAM. Upon rehearing of this case the court adopts this modified opinion in lieu of the opinion filed herein on June 27, 1912.

The chancellor in this case sustained a general demurrer to the bill of appellant and entered a decree dismissing it with costs.

It was averred in the bill that appellant and appellee entered into a written agreement, the material provisions of which were, that appellee would supply appellant with natural gas for the sum of $4,000 per year based on appellant's boiler capacity of four hundred and fifty horsepower so long as appellee should have sufficient gas in its mains at Olney to satisfactorily furnish said supply without detriment or inconvenience to their domestic consumers and to discontinue the supply whenever the supplying of such gas should become unprofitable or entail a loss to the appellee. Subsequently to the making of this agreement the parties by a supplemental agreement added to it further provisions, whereby appellant was given the privilege to use gas under any additional boilers that might be installed in appellant's plant at the rate of $2,000 additional to the sum above mentioned for each additional one hundred and fifty horsepower boiler installed; that such additional consumption should be in conformity with the provisions of the original contract (above set forth) and that said original contract should be in no wise varied, abridged or abrogated, but continued in full force and effect without change, except it was provided that the right to discontinue the supply of gas when it should become unprofitable or entail a loss as provided in the original contract should not be exercised as long as present conditions of supply and service do not substantially change or entail material additional expense. Other

provisions of the agreement are not set forth as they are not material to the questions presented here.

It was further charged that appellee had an ample supply of gas to furnish to the citizens of Olney and to all manufacturing plants but that since the making of said contract it had made numerous other contracts for furnishing gas and to meet such additional contracts had made no provision for additional pipe line to meet such new contracts and then claimed it could not furnish all the gas required by appellant; that appellee asserted it was then laying an additional eight-inch main from its wells and when completed it would be able to supply all the gas needed to meet its contracts; that the cost of other kinds of fuel was so great that to be required to use it would endanger the operation of appellant's business, and the use of gas for fuel was essential to the successful operation of its business.

It was further charged that upon entering into said contract appellant had gone to great expense to equip its boilers for the use of gas and to install equipment of the kind suggested and approved by appellee; that appellee represented the supply of gas was good for fifteen or twenty years; that since the contract was entered into appellant had expended $30,000 in extensions of its plant based upon and in reliance upon such representations. That in August and September, 1911, appellee failed and refused to furnish a sufficient supply of gas and voluntarily agreed to pay for the coal necessary to supply the deficiency in the gas furnished; that afterwards appellee gave notice it would not pay for coal after September 20, 1911; that there would be due appellee pursuant to the contract for August and September, 1911, the sum of $950, less the sum of $748.85 paid by appellant for coal used and so agreed to be furnished, leaving a balance due appellee on October 1, 1911, of $201.15; that on October 4, appellant tendered to appellee said balance which was refused

450   APPELLATE COURTS OF ILLINOIS.

The Egyptian Packing Co. v. The Olney Gas Co., 183 Ill. App. 447.

and appellee gave notice that if payment was not made promptly it would be compelled to discontinue the supply of gas on account of nonpayment of bill rendered and now due. Appellant further charged it was ready and willing to pay its monthly bills upon settlement, and it deposited with the clerk the sum of $201.15 claimed by appellant to be due October 1, 1911, and avers that it stands ready the first day of each succeeding month to pay the amount then due.

Appellant prayed an accounting between the parties and an injunction restraining appellee from diminishing or interfering with the supply of gas to appellant.

We are unable to find any provision in the original or supplemental agreements set forth that would require appellee to furnish any more gas than it could furnish without detriment or inconvenience to its domestic consumers. This was the original agreement, and it was expressly stated in the supplemental agreement that the original contract should continue in force except it was changed so that appellee could not refuse to supply gas if it became unprofitable.

The averment in the bill that when the supplemental agreement was made appellee represented that the supply of gas was good for fifteen or twenty years and that appellant expended $30,000 in extensions of its plant based on such representations did not change the terms of the agreements. Appellee did not undertake or promise to furnish the additional gas in consideration that appellant would install more boilers, and its alleged representations amounted to nothing more than an expression of opinion that there would be a sufficient supply of gas. Even if this contract under seal could be altered by parol, there was no promise to furnish such additional supply of gas.

Under the agreement there was no obligation on the part of appellee to furnish coal to supply the boilers arising from the insufficient supply of gas, but having (as charged) voluntarily directed appellant to purchase coal at its expense and appellant having done so

in reliance upon such direction, appellee is estopped from repudiating the sum of $748.85 paid by appellant for such coal. Where one has been induced to act or to refrain from acting upon the representations of another so that he will be substantially injured if the other party be allowed to repudiate his acts, the doctrine of estoppel applies. Herman's Law of Estoppel, 426.

Deducting the sum paid for coal, appellant, according to the averments of the bill, offered to pay the balance due which was refused by appellee with a notice it would discontinue the supply of gas on account of nonpayment of its bill rendered. It is the duty of a public servi 'e corporation to furnish its commodity or service without arbitrary discriminations. The business of appellee is one impressed with a public interest and it must serve all who apply upon equal terms and at reasonable rates. *Wagner v. City of Rock Island*, 146 Ill. 139.

The undertaking of appellee to supply appellant with gas without detriment or inconvenience to appellee's domestic consumers was at least within its common law duties. It appears from the allegations of the bill that appellant was not in arrears and that appellee had threatened that if payment of the bill rendered by it was not promptly made appellant's supply of gas would be entirely discontinued on account of such nonpayment. We do not believe that appellee would be justified in wholly shutting off appellant's use of the gas on account of its failure to comply with such illegal demand. We think the appellant is entitled to relief under the allegations and general prayer for relief contained in the bill. The remedy by injunction will lie to restrain persons engaged in a public service from shutting off water in violation of its contract where it would result in great injury to the consumer, and the injunction will not be denied because the ultimate effect of it would be to compel the Company to comply

with its contract. *Horsky v. Helena Consol. Water Co.,* 13 Mont. 229; *McEntee v. Kingston Water Co.,* 165 N. Y. 27; *Gordon & Ferguson v. Doran,* 100 Minn., 343, 8 L. R. A. (N. S.) 1049; *Sedalia Brewing Co. v. Sedalia Water Works Co.,* 34 Mo. App. 49.

The averments of appellant's bill that it was willing and ready to pay the balance of the amount due for gas furnished and to be furnished, that appellee had threatened to cut off the supply on the false assumption of the nonpayment of its bill by appellant, and that serious injury would result therefrom, would, if true, entitle appellant to an injunction restraining appellee from shutting off such supply of gas as it was entitled under the law to receive, and it was error to sustain the demurrer.

The cause is reversed and remanded with directions to overrule the demurrer.

*Reversed and remanded with directions.*