Richey v. Omaha & Lincoln Railway & Light Co.

CHARLES A. RICHEY, APPELLEE, v. OMAHA & LINCOLN RAILWAY & LIGHT COMPANY, APPELLANT.

FILED FEBRUARY 21, 1917. No. 19889.

1. Contracts: CONSTRUCTION. Technical terms in a contract may be given a nontechnical meaning relied upon by one party, where the other party had reason to suppose the former so understood them. Rev. St. 1913, sec. 7909.

2. Injunction. An injunction may be granted to prevent a public service corporation from wrongfully cutting off a supply of electricity which it is under contract to furnish.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Brome & Brome* for appellant.

*Vinsonhaler, McGuckin & Caldwell, contra.*

Rose, J.

Plaintiff is a dealer in sand, and by means of pumps procures his supply from the Platte river near Louisville. Defendant operates an electric railway between Omaha and Papillion, and transmits and sells electricity for power and other purposes. Under a contract dated February 6, 1914, the parties agreed that plaintiff should be supplied with electricity for the term of two years, and that he should have the privilege of extending the period to five years—an option which he has exercised. For a time plaintiff operated his pumps with electricity furnished under the contract. Claiming that he refused to pay for power used, defendant severed the wires and removed the appliances employed in delivering currents. Plaintiff resorted to equity. From a decree requiring defendant to restore the abandoned service and enjoining further interference therewith in violation of the contract, this appeal is taken.

The appeal presents these questions: Was plaintiff in default in paying for electricity furnished? Was he entitled to the equitable remedy of injunction? Whether he was in default depends on the contract. The material provisions are:

"The rate to be charged for this current will be 2½ cents per kilowatt-hour for the first 60 hours use per month of the maximum demand; 2¼ cents for the second 60 kilowatt-hours, and 2 cents for all current in excess of 120 hours' use of maximum demand per month. In addition to the above a fixed charge of $1.50 per horse-power of maximum demand per month will be charged; said maximum demand to be determined by taking the highest average for 15 consecutive minutes (measured by a maximum-demand meter of standard make) during the month for which bill is rendered; said average to be figured on a kilowatt-hour basis. All current to be measured by standard make electrical meters. You to guarantee us a minimum revenue of $9 per annum per horse-power connected, based upon

the rated capacity given by the manufacturer of the motor.  *  *  *

"We will guarantee that at the above rate your total net cost of operating your 75 horse-power motor on an 8″ sand pump shall not exceed $1 per hour, and it is agreed that should, at the above rate, the total amount of your bills exceed the above guaranty, then you are to make payment to us on the guaranty basis. Should the amount not equal the guaranty basis, you are to remit in accordance with the rates in the foregoing paragraph. You to report the actual number of hours motor is operated each month; we to retain the privilege, however, of installing a registering meter at any time. All installations to be based on the same guaranty, in proportion to the horse-power connected.  *  *  *

"Each of your plants are to be dealt with as a separate proposition, but each to be operated under the foregoing conditions."

The trial court found that plaintiff was required to pay for electric power furnished at a rate not exceeding $1 an hour for each 75 horse-power motor, "based upon the rated capacity given by the manufacturer of the motor," and that payments for additional power should be made on the same basis. If this construction is correct, plaintiff, as shown by the proofs, paid for all the power used by him before bringing suit. Defendant contends, however, that plaintiff was required to pay for the power actually used at the rate specified in the first paragraph of the contract copied herein; the guaranty, as understood by defendant, being that the cost of operating a pump one hour should not exceed $1 for each 75 horse-power used, without regard to the manufacturer's rated capacity of the motor. Evidence on defendant's behalf shows that electrical engineers use the term "horse-power connected" as meaning the power actually used, which may be twice the manufacturer's rated power of the motor. Under such a construction of the contract the amount due for

power used each month would exceed the amount for which plaintiff has paid. In view of the entire record, however, the construction adopted by the trial court seems to be correct. Prior to the execution of the contract, defendant proposed the rate mentioned in the first paragraph quoted herein, but plaintiff said that he knew nothing about electrical terms, and that he had been operating a 60 horse-power oil-engine at a cost of 65 cents an hour. The guaranty clause, the second paragraph copied herein from the contract, was then inserted and the contract executed. Under the circumstances the guaranty clause controls conflicting provisions. The contract was drafted by defendant's agents. They were familiar with their technical terms and they knew that plaintiff was not. They had occasion to learn his understanding of the guaranty clause, when considered with the entire contract and the surrounding circumstances. The sense in which they had reason to suppose he understood the contract must prevail. Rev. St. 1913, sec. 7909. He was not in default in paying for electric power used under this construction of the contract.

Was plaintiff entitled to an injunction? Defendant contends that an action at law for damages would afford plaintiff adequate relief. Defendant is a corporation organized under the laws of Nebraska, relating to the organization of railway companies. Rev. St. 1913, secs. 5927-5935. The articles of incorporation authorize it "to generate, sell and transmit electricity for power, light and heating. purposes, and for general use to persons, corporations, or municipalities." It is operating an electric railway from Omaha to Papillion. Under authority of statute it transmits "over its right of way currents of electricity for the purpose of * * * supplying power for the use of such railroad and the use of others." Rev. St. 1913, sec. 5930. In its answer defendant admits that it is "engaged in the transmission and sale of electricity to serve individ-

uals and corporations." The proofs justify a finding that defendant in transmitting and selling electricity is a public service corporation. In that event, defendant insists that plaintiff has an adequate remedy by mandamus. That is the proper procedure to compel a public service corporation to furnish service to the public. *State v. Nebraska Telephone Co.*, 17 Neb. 126. The writ of injunction is, however, a proper remedy to prevent it from wrongfully discontinuing service which it is under contract to furnish. *Seaton Mountain Electric Light, Heat & Power Co. v. Idaho Springs Investment Co.*, 49 Colo. 122, 33 L. R. A. n. s. 1078; *United States Electric Lighting Co. v. Metropolitan Club*, 6 App. D. C. 536; *Egyptian Packing Co. v. Olney Gas Co.*, 183 Ill. App. 447; *Graves v. Key City Gas Co.*, 83 Ia. 714; *Sickles v. Manhattan Gas-Light Co.*, 64 How. Pr. (N. Y.) 33.

The judgment of the district court is therefore

AFFIRMED.