CITY OF CURTIS, APPELLANT, v. MAYWOOD LIGHT COMPANY ET AL., APPELLEES.

288 N. W. 503

FILED NOVEMBER 17, 1939.   No. 30630.

*Wells, Martin, Lane & Offutt,* for appellant.

*Butler, James & McCarl, Fred J. Schroeder, Harold Johnson* and *Robert H. Downing, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and KROGER, District Judge.

EBERLY, J.

This is a suit in equity prosecuted by the city of Curtis, Nebraska, the principal relief sought being to secure the rescission and annulment of a contract of purchase and sale, in writing, bearing date of March 23, 1936, executed by plaintiff herein, and the Maywood Light Company by Harry Hall, sole owner thereof, and also Harry Hall and Hazel Hall, his wife. Pursuant to this contract of purchase, there had been sold, transferred and conveyed to the city of Curtis "a certain franchise, which is more specifically described in Ordinance No. 51 of the village of Maywood, Nebraska (the same being a 25-year franchise from and after the 20th day of June, 1930, and obligating the grantee to furnish electric current at the rates and for the purposes therein set forth to the village of Maywood and to its inhabitants) ; all of the electric distribution system now in operation in the village of Maywood, Nebraska, including all poles, lights, wires, transformers, meters, and all equipment belonging to said electric distribution system and two substations, being on each end of the transmission line between Maywood, Nebraska, and Curtis, Nebraska, and all transmission lines between Maywood and Curtis, Nebraska, and all right of way upon which said transmission line is located; the easement upon lot four of block eleven, in the village of Maywood, Nebraska; all right under a certain contract for joint use of specified poles, to which contract Harry Hall and the Maywood Carrico Telephone Company of Maywood, Nebraska, are parties." In consideration of which the city of Curtis had accepted and received said property, including the proper assignment of said franchise, executed and delivered

as the purchase price therefor its revenue warrants in the sum of $35,000, payable solely from the revenue and earnings of its electric light and power plant, and thereupon entered into possession of the property purchased, which it operates in connection with and by electric current generated in its own electric light and power plant at Curtis, Nebraska, which was owned and operated by it at the time of making the contract. It had also engaged in supplying electric current for the purpose of power, heat and light to its patrons situated in the village of Maywood from the 23d day of March, 1936, which it continued without interruption after the commencement of this action. So far as the record before us is concerned, the transaction was accepted and approved by the village of Maywood, though that village is not a party to this proceeding.

The relief sought was based on a claim that the contract of sale entered into was *ultra vires* and void, and plaintiff asked for the annulment and rescission thereof, and of the unpaid portion of the warrants outstanding, and for other relief incident thereto necessary to restore the original *status quo* formerly existing as to all parties who had become interested in the transaction. Without detailing the course of litigation, it may be said that, after all parties to the proceeding had filed their respective pleadings, all the defendants filed a motion for judgment on the pleadings, which was sustained by the trial court and the action dismissed, that court's finding in support of its judgment being "that the contract of March 23, 1936 * * * was within the powers of the city of Curtis to make and enter into, and is authorized by the statutes of Nebraska, and that the warrants issued pursuant to said contract are not void as beyond the authority of the plaintiff city, but are authorized by the statutes of Nebraska and are valid." From the judgment and finding plaintiff prosecutes this appeal.

Appellant's contention is, viz.: "That the city of Curtis had no corporate power to acquire, own and operate the distribution system and electric plant which was located inside the corporate limits of the village of Maywood and

had no power to acquire, own and exercise the franchise granted by the village of Maywood for the construction and operation of the electric plant and distribution system within its borders."

All parties to this controversy agree that the proper disposition of the same is dependent upon a correct interpretation of art. 6, ch. 70, Comp. St. Supp. 1937. This is Initiated Law No. 324, which, in the proper manner, was duly submitted to and adopted by the electorate of this state. The title of this act, so far as here involved, includes, viz.: "An act relating to cities, villages, and public electric light and power districts engaged in the generation, transmission, distribution, purchase and/or sale of electrical energy for lighting, heating and power purposes; to provide for the extension, by any city, village, or public electric light and power district of its electric light and power plants, transmission lines and service outside of the boundaries of such municipality or district; to provide for interconnection of electric light and power plants, lines, systems and service by and between cities, villages and public electric light and power districts in this state; to authorize the pledging or hypothecating of the net earnings and profits of publicly-owned electric light and power plants, lines or systems, to pay for property necessary or useful in the operation of such plants, lines or systems; * * * and to make applicable to cities, villages and public electric light and power districts, the general provisions of law concerning private electric light and power companies as to eminent domain, right of way and physical construction and maintenance of electric light and power plants, lines and systems." Laws 1931, ch. 116.

The provisions of this enactment applicable to the situation and to the arguments and contentions of the several parties here, are the following, viz.:

"Section 1. Any city, village, or public electric light and power district within the state, which may own or operate, or hereafter acquire, or establish, any electric light and power plant, distribution system, and/or transmis-

sion lines may, at the time of, or at any time after such acquisition or establishment, extend the same beyond its boundaries, and for that purpose is hereby authorized and empowered to construct, purchase, lease, or otherwise acquire, and to maintain, improve, extend, and operate electric light and power plants, distribution systems and transmission lines, outside of the boundaries of such city, village, or public electric light and power district, for such distance and over such territory within this state as may be deemed expedient. In the exercise of the powers granted by this section any such city, village, or public electric light and power district may enter into contracts to furnish and sell electrical energy to any person, firm, association, corporation, municipality, or public electric light and power district. No such construction, purchase, lease, acquisition, improvement, or extension of any such additional plant, distribution system and/or transmission lines, however, shall be paid for except out of the net earnings and profits of one or more or all of the electric light and power plants, distribution systems and transmission lines, of such city, village, or public electric light and power district. The provisions of this act shall be deemed cumulative and the authority herein granted to cities, villages and public electric light and power districts, shall not be limited or made inoperative by any existing statute.

"Section 2. For the purpose of selling or purchasing electrical energy for lighting, heating or power purposes, any city, village, or public electric light and power district in this state is hereby authorized to enter into agreements to connect and interconnect its electric light and power plant, distribution system and/or transmission lines with the electric light and power plant, distribution system and/or transmission lines of any one or more other cities, villages, or public electric light and power districts in this state, upon such terms and conditions as may be agreed upon between the contracting cities, villages and public power districts."

The clear legislative intent evidenced by the foregoing

enactment is controlling. The economic views entertained by the membership of this court can in no manner and in no degree affect the solution of the question here presented. On the contrary, proper discharge of judicial duty must clearly recognize that "The legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." *Johnson v. United States,* 163 Fed. 30, 18 L. R. A. n. s. 1194. See *Keifer & Keifer v. Reconstruction Finance Corporation,* 306 U. S. 381, 59 S. Ct. 516.

The intention of the legislature is here to be obtained primarily from the language used in the enactment, which must be given effect according to its plain, obvious meaning. *Gibson v. Peterson,* 118 Neb. 218, 224 N. W. 272; *State v. City of Lincoln,* 101 Neb. 57, 162 N. W. 138; *State v. Farmers Irrigation District,* 98 Neb. 239, 152 N. W. 372; *State v. Bratton,* 90 Neb. 382, 133 N. W. 429; *Goble v. Simeral,* 67 Neb. 276, 93 N. W. 235.

The exact words of the statute empower the city of Curtis to extend its electric light and power system "beyond its boundaries, and for that purpose (it) is hereby authorized and empowered to construct, purchase, lease, or otherwise acquire, and to maintain, improve, extend, and operate electric light and power plants, distribution systems and transmission lines, outside of the boundaries of such city, * * * for such distance and over such territory within this state as may be deemed expedient." But, not satisfied with an absolutely unconditional grant of power, which manifestly and necessarily includes the right to operate within the domain of other cities or villages, the legislature has added thereto the words, "The provisions of this act shall be deemed cumulative and the authority here-

in granted to cities, villages * * * shall not be limited or made inoperative by any existing statute." In this connection it may be said that, obviously, statutes are the sole source of municipal rights and powers. In addition, section 2, quoted above, necessarily contemplates that one city may carry on the business of selling electrical current within the corporate boundary of another "upon such terms and conditions as may be agreed upon between the contracting cities." Indeed, we have but to give force and effect to clear and unambiguous language of this statute to sustain the transaction here involved in all its details, as well as to affirm the findings of the trial court, wholly unmodified. Nor, in so doing, do we in any manner depart from the principles of municipal law established by our decisions. In a case involving the operation of water-works owned and operated by a municipality, Fawcett, J., in delivering the opinion of this court, in *Henry v. City of Lincoln*, 93 Neb. 331, 140 N. W. 664, employed the following language with reference to municipal corporations, viz.:

"It is entitled to these privileges and immunities (governmental in nature) because of the fact that the functions and duties above referred to are imposed upon it by law and it must discharge and perform them; but here the duties imposed upon it by law cease. It is no part of its duty, as a municipal corporation, to engage in a purely business or commercial enterprise. When it seeks and obtains from the legislature permission to engage in such an enterprise, its act in so doing is purely voluntary on its part, and it thereby assumes a third relation, separate and distinct from the dual relations above considered. While occupying this third relation no governmental functions or corporate duties, as a municipality, devolve upon it. It is then engaged in an ordinary business enterprise, and is bound by all the rules of law and procedure applicable to any other private corporation or person engaged in a like enterprise. It has no greater or higher privileges or immunities than are possessed by any other private corporation. It is subject to the same liabilities and entitled to the same defenses; no more and no less."

In the case of *Cook v. City of Beatrice,* 114 Neb. 305, 207 N. W. 518, the principles above quoted were reaffirmed, and, in addition, the principle was announced that, "in maintaining its electric plant and selling current therefrom, the city of Beatrice was acting outside its governmental functions and corporate duties." It was thereby engaging in an ordinary business enterprise in which it inherently possessed no greater or higher privileges or immunities than those possessed by any other private corporation.

These conclusions are sustained by the following authorities: *Crandall v. Town of Safford,* 47 Ariz. 402, 56 Pac. (2d) 660; *Keever v. City of Mankato,* 113 Minn. 55, 129 N. W. 158; *City of Colorado Springs v. Colorado City,* 42 Colo. 75, 94 Pac. 316; *Pikes Peak Power Co. v. City of Colorado Springs,* 105 Fed. 1, 44 C. C. A. 333; *Muir v. Murray City,* 55 Utah, 368, 186 Pac. 433; *City of Tucson v. Sims,* 39 Ariz. 168, 4 Pac. (2d) 673; *City of Henderson v. Young,* 119 Ky. 224, 83 S. W. 583; *Milligan v. City of Miles City,* 51 Mont. 374, 153 Pac. 276; *Larimer County v. City of Fort Collins,* 68 Colo. 364, 189 Pac. 929; *Incorporated Town of Sibley v. Ocheyedan Electric Co.,* 194 Ia. 950, 187 N. W. 560.

On principle, it would follow that, as the business of maintaining and operating a municipal electric plant and selling current therefrom is wholly outside the truly governmental powers and functions of such city, the place of furnishing or receiving the electric current would be in no manner controlled by the situs of the same with reference to the corporate boundaries of the cities involved in the transaction.

The following authorities support the contention that, where a municipality is given power under the circumstances then existing to furnish public utility service beyond its corporate limits, it has the right to provide service within the corporate boundaries of another municipal corporation. *Crandall v. Town of Safford, supra; Kansas Gas & Electric Co. v. City of McPherson,* 146 Kan. 614, 72 Pac. (2d) 985; *Muir v. Murray City, supra; City of Colorado*

*Springs v. Colorado City, supra; City of Omaha v. Omaha Water Co.,* 218 U. S. 180, 30 S. Ct. 615, 54 L. Ed. 991.

The conclusion therefore follows that the contract sought to be rescinded as *ultra vires*, under the terms of the statutes controlling, was clearly within the powers of the city of Curtis to make.

The judgment of the trial court as to all parties to this proceeding is in all respects correct, and it is

AFFIRMED.

CARTER, J., dissenting.

The only question in this case is whether the city of Curtis had the power to acquire the franchise granted by the village of Maywood and to own and operate the electric plant and distribution system within the corporate limits. of the village of Maywood and sell electric energy direct to its inhabitants. As a premise for the discussion to follow, it cannot be disputed that a municipal corporation is a creature of statute. Its powers are limited to those granted in express terms, those reasonably implied from, or incident to, powers expressly granted, and those essential to the declared objects and purposes of the municipality. Special grants of power are to be strictly construed, and all doubt will be resolved against the existence of a power, rather than in favor of it. The rule generally is that a power not granted is withheld.

The legislature has authorized villages to grant franchises to and make contracts with any person, company or association for the purpose of granting to such person, company or association the furnishing of electric energy. Comp. St. 1929, sec. 17-440. Authority to grant such a franchise to another municipality was not granted, and consequently the village of Maywood had no power to grant a franchise to the city of Curtis. Clearly, if the city of Curtis was not a proper party to obtain such a franchise directly from the village of Maywood, it cannot subvert the statute and obtain one by assignment.

Neither is the city of Curtis authorized by statute to take or own a franchise from another city or village. The initi-

ated act before us, chapter 116, Laws 1931, authorizes cities and villages to extend their electric light and power systems beyond their corporate boundaries, to enter into agreements to connect and interconnect its electric light and power system with those of other cities and villages, and to enter into contracts to furnish and sell electric energy to any person, firm, association, corporation, municipality or public electric light and power district. We necessarily arrive at the conclusion that the village of Maywood is without power to grant a franchise to the city of Curtis for the privilege of providing electrical energy, and the city of Curtis has no authority to take or own such a franchise.

To permit a city or village to invade the territorial limits of another municipality and assume governmental or proprietary powers therein creates a conflict of jurisdiction and authority disadvantageous to both. Questions as to tax exemptions, eminent domain, control of rates, the compelling of adequate service, and the right of condemnation by the invaded city or village, create a field of political confusion which ought not be permitted in the absence of a statute expressly authorizing it. I submit that the language used in the act conclusively establishes an intent to avoid such a situation by withholding any such grant of authority to the cities and villages of this state. The attempt of the city of Curtis to take, own and operate under the franchise granted to the Maywood Light Company is, in my judgment, wholly unlawful, and the judgment of the district court ought to be reversed.

SIMMONS, C. J., and JOHNSEN, J., concur in dissent.