STATE OF NEBRASKA EX REL. DAWSON COUNTY FEED PRODUCTS, INC., A CORPORATION, APPELLEE, V. OMAHA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION, APPELLANT, CITY OF FREMONT, NEBRASKA, A MUNICIPALITY, INTERVENER-APPELLANT, UTILITY SECTION OF THE LEAGUE OF NEBRASKA MUNICIPALITIES, AMICUS CURIAE.

118 N. W. 2d 7

Filed November 16, 1962.   No. 35259.

Fraser, Stryker, Marshall & Veach and Tracy J. Peycke, for appellant Omaha Public Power Dist.

Sidner, Lee, Gunderson & Svoboda, for intervener-appellant City of Fremont.

Stewart & Stewart, for appellee.

Perry & Perry, for amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This action was instituted by the State of Nebraska on relation of Dawson County Feed Products, Inc., a corporation, relator. By the action the relator sought a writ of mandamus for the purpose of requiring Omaha Public Power District, a public corporation, respondent, to furnish to relator all necessary electrical energy and electricity required in the construction and operation of its plant on certain described real estate in Dodge County, Nebraska, about 1 mile north of the city limits of the city of Fremont, Dodge County, Nebraska, the purpose of which plant was the blending and storage of alfalfa pellets. The City of Fremont, Nebraska, became an intervener for the purpose of responding to and defending against the application of the relator for the writ of mandamus.

The action was tried to the court and at the conclusion of the trial a judgment was rendered granting the writ of mandamus prayed for by the relator. Separate motions for new trial were filed by the respondent and intervener. These were overruled. From the ruling on these motions and the judgment the respondent and intervener have appealed.

As grounds for reversal the respondent and the intervener have set forth in their briefs numerous assignments of error. For reasons which will become apparent later herein these do not require separate recognition or consideration. The case has been briefed at length by the parties and by the League of Nebraska Municipalities as amicus curiae, but the basic matter for determina-

tion is the true present meaning of section 70-401, R. R. S. 1943, and proper application of that meaning to the issues which have been presented by the record in this case.

The pertinent part of the statute is the following: "All persons, associations or corporations engaged in this state in the generating or transmitting of electric current for sale, or both, for power or other purposes, where the person, association or corporation operates an electric transmission line outside of the limits of incorporated cities or villages, shall furnish facilities, accommodations and service * * * upon application, to (1) any individual or any person who may reside in a territory which may be served by an electric transmission line and who may apply for physical connection and service; * * *." There are other provisions in this and succeeding sections of the statute but they do not appear to have controlling significance as to issues in this case.

The relator contends that under this statutory provision and the pertinent facts it was and is entitled to the relief granted by the judgment of the district court.

A summary of the petition of the relator, to the extent necessary to be set out herein, is that the relator is a corporation organized and existing under the laws of the State of Nebraska, with its principal place of business in Lexington, Dawson County, Nebraska, and engaged in the business of processing alfalfa and the storage of alfalfa products; that the respondent is a public corporation with its principal place of business in Omaha, Douglas County, Nebraska, and engaged in the business of generating, transmitting, and selling electrical energy and electricity to the public; that the relator is the lessee of certain real estate 450 feet by 500 feet in dimensions in Section 11, Township 17 North, Range 8 East of the 6th P.M., in Dodge County, Nebraska, which real estate is about 1 mile north of the city limits of the city of Fremont, Dodge County, Nebraska, it being on

the right-of-way of the Chicago, Burlington & Quincy Railroad Company; that on this real estate the relator intends to and is constructing a plant for the purpose of blending and storage of alfalfa pellets; that in the construction and operation of the plant it is necessary to use electrical energy; that the respondent owns and operates an electrical transmission line located upon the public road right-of-way immediately to the north of this leased real estate; that the respondent furnishes electrical energy to rural and other customers in the immediately surrounding vicinity; that the relator desires to purchase electrical energy from the respondent for the construction and operation of the plant; and that relator requested that it be furnished and offered to pay therefor the regular industrial rates established by the respondent, and also offered to comply with reasonable rules, regulations, and conditions of the respondent, but that the request of the relator was refused.

On the basis of this refusal, which the relator contends was willful and wrongful, the relator made the application for the writ of mandamus which was awarded.

It is stipulated that the real estate of the relator is three-fifths of a mile north of the north line of the city of Fremont.

Other pertinent facts pleaded and which are not in dispute are that the intervener is a legally organized and operating municipality which through a board of public works, under proper authority, has developed an electric power system having exclusive rights to generate and distribute electrical energy within the city limits of Fremont; and that by virtue of contract it furnishes electrical energy to certain territory adjacent to the city of Fremont under the natural and inherent rights of the city to expand its electrical load to the expanding suburban and fringe area of the city, which area potentially is subject to annexation and which is subject to zoning and building regulations, within a one-mile

limit pursuant to the provisions of sections 16-901 to 16-904, R. R. S. 1943. The intervener has and does serve customers at locations within a not clearly defined or described area, although in an area of several miles, in which the plant of the relator is located. Likewise the respondent serves customers at locations within this same area.

It is pointed out here that the rights of the two parties to so serve the area are not controverted. It is further pointed out that the real question is not that of which had the right to serve under the circumstances, but rather that of which, if either, had the right to refuse to serve, more particularly stated, that of whether or not the respondent had the right to refuse.

Some of this service has been rendered over a period of years and some of it is of recent origin. Present determination of which shall furnish requested service depends upon private agreement in each separate instance of application for service between the respondent and the intervener. No formal agreement in relation to this subject has come forth and it has not been pointed out that there is any such agreement.

The date or character of the request or demand for service and that of its refusal do not appear, but the parties make no point of this.

After the demand and refusal the relator obtained the necessary electric service from the intervener. The electric current supplied to the relator was delivered first to the intervener by the respondent and by the intervener to the relator. The estimated cost of the current from the intervener was $1,193.50 a month, whereas the estimated cost, if it had been obtained from the respondent, would have been $962.50 a month.

It is stated here that it is not urged that the relator has, by obtaining the needed service from the intervener after denial thereof by the respondent, waived any right, if it had any right, to the service requested of the respondent.

As has been indicated the relator predicated its claimed right to service on the portion of section 70-401, R. R. S. 1943, which has been quoted. The defense made by the respondent and the intervener is in substance and effect that this provision does not declare the right which was awarded to the relator by the judgment of the district court, in consequence of which they contend that the writ of mandamus was erroneously issued.

It is urged by the respondent that section 70-401, R. R. S. 1943, has no application in an instance such as this where an industrial plant seeks service from it. The position taken by the intervener supports this theory.

To support this theory the respondent urges substantially that by the language employed in the section, a party having the status of the relator is not entitled to the benefits of the statute. The statute provides that "(1) any individual or any person who may reside in a territory which may be served by an electric transmission line" outside of the limits of incorporated cities or villages shall be entitled, on conditions imposed by the statute, to the service described. The relator, it is contended, is not an individual or person residing in the territory wherein service is sought, hence service can with impunity be refused.

The position of the relator is that no such narrow interpretation was intended by the Legislature. Its position is that the words used extend to any natural or artificial person or entity having need of the service. This question does not appear to have been directly passed upon by this court since section 70-401, R. R. S. 1943, came into being.

This provision in its present substance came into being by the enactment of chapter 170, Laws 1923, page 403. It was amended with but one change in substance by chapter 143, Laws 1925, page 374. By this change the right to service was extended to "any individual or any person who may reside in a territory which may be served by an electric transmission line" whereas the

provision of the 1923 act extended service only to "any individual or any person who may reside along or immediately adjacent to such an electric transmission line." Slight and insignificant changes are found in the section which appears as section 70-501, Comp. St. 1929, and also in the present revision.

The provision by its terms imposes a mandatory duty and obligation upon those engaged in generating and transmitting electric current for sale in the state to furnish electric current. It confers a right to receive current, and it appears reasonably from the language of the entire statute that the intent of the Legislature was that the right to receive current was conferred upon persons and individuals within the broad and not the narrow meaning of those terms contended for by the respondent and the intervener. Such intent could not be regarded as inconsistent with the terms of the statute. Moreover, in Miller v. Iowa-Nebraska Light & Power Co., 129 Neb. 757, 262 N. W. 855, a case not in point on any issue presented here except the intent of the Legislature in 1923 in the enactment of this provision, it is said: "The principal object and purpose of this act was to require persons, associations, companies and corporations, * * * to furnish physical connection between their power lines to properties near or adjacent thereto outside the limits of incorporated cities and villages."

In addition to all of this the Legislature by the title to the act of 1923 left no doubt of its intention. The declaration is contained in the title as follows: "AN ACT to provide that electric transmission lines and power companies of Nebraska shall afford and give to all persons, associations and corporations upon reasonable and equal terms, service facilities and physical connection to their lines running between cities and villages within this state, and to provide for the enforcement of the provisions of this act."

It is of course true that this title is not the title of

the act of 1925 and it is not the title to the revisionary act or acts directly leading to section 70-401, R. R. S. 1943, but it is an unchanged part of the history of the provision. This is history which it is proper to examine for the purpose of determining the legislative intent. In Omaha Nat. Bank v. Jensen, 157 Neb. 22, 58 N. W. 2d 582, it was said: "In case of doubt as to the meaning of a statute, resort may be had to the title as an aid to discover the legislative intent, but by no means to enlarge the scope of the statute so as to include a subject not fairly expressed in the body of the act."

In Nebraska Dist. of Evangelical Lutheran Synod v. McKelvie, 104 Neb. 93, 175 N. W. 531, 7 A. L. R. 1688, it was said: "The legislature must be presumed to have had in mind all previous legislation upon the subject, so that in the construction of a statute we must consider the pre-existing law and any other acts relating to the same subject." See, also, Chicago & N. W. Ry. Co. v. Bauman, 132 Neb. 67, 271 N. W. 256. Also by the holdings in the following cases it is made clear that resort to the title of the act of 1923 is properly available for the purpose of ascertaining the legislative intent inhering in section 70-401, R. R. S. 1943: Hansen v. Dakota County, 135 Neb. 582, 283 N. W. 217; McGraw Electric Co. v. Lewis & Smith Drug Co., Inc., 159 Neb. 703, 68 N. W. 2d 608; Yeoman v. Houston, 168 Neb. 855, 97 N. W. 2d 634; State ex rel. Bottolfson v. School Board, 170 Neb. 417, 103 N. W. 2d 146; Metropolitan Utilities Dist. v. City of Omaha, 171 Neb. 609, 107 N. W. 2d 397.

The conclusion reached is that it must be said that the relator was included within the classes named and described in section 70-401, R. R. S. 1943.

The respondent as ground of resistance of the relator's request asserts that its service is in the nature of a public offering and it is not bound to serve beyond the area and customers embraced in its offering. Factually, a matter conceded by the presentations of the respondent and the intervener, this area is within the

area of the public offering of the respondent. It is within the offering area of both the respondent and the intervener. It is pointed out in the record by the two parties that when an application is received by either they decide at the time and without agreement with the applicant and without reference to any statutory authority which shall perform the service.

In a situation such as this, under section 70-401, R. R. S. 1943, where two parties are occupying the same service area, the obligation to serve a particular customer in the area depends upon and is required of the one upon which the request is made.

The next proposition urged by the respondent and also the intervener as ground for reversal of the judgment herein is in effect that the agreement between the respondent and the intervener whereby the respondent refused to comply with a request for service became, under chapter 336, Laws 1961, page 1046 (sections 70-901 to 70-905, R. S. Supp., 1961), a valid agreement and therefore the relator was not entitled to relief under the terms of section 70-401, R. R. S. 1943.

Neither the provisions of this chapter of the statute nor the authorities cited support the contention of these parties. The statute in nowise contravenes the substantive rights and obligations declared by section 70-401, R. R. S. 1943, or any other declaration of substantive right in the field of electric current. It calls attention to defects in the field of production and distribution of electric current and points to corrective measures which may and should be employed, but at no point does it command the performance of any act or practice the effect of which would destroy or impair the rights and duties defined by section 70-401, R. R. S. 1943.

This is not to say that if the Legislature had implemented the commentary contained in chapter 336, Laws 1961, page 1046, such implementation would have been futile. The statement here is that it did not do so. Clearly there is nothing in this chapter which impairs

any rights of users of electricity or duties of producers thereof under section 70-401, R. R. S. 1943.

This is a sufficient answer to the proposition that mandamus may not issue the result of which would frustrate and defeat a legislative program and a declared public policy. The act did not declare a tangible or substantial legislative program or public policy.

The respondent is a public power district within the meaning of sections 70-601 to 70-603, R. R. S. 1943, and the intervener is a municipality which operates a plant for the production and distribution of electric current as a public utility, to the extent necessary to mention here, the same as a public power district. As to this there is no dispute. The two furnish electric current in the area adjacent to the plant of the relator. The right to do this is not questioned. There is no division of area between the two and about this there is no dispute. The right of the intervener to operate outside the city of Fremont is not questioned.

The intervener asserts that districts and municipalities have the discretionary right to determine how the service shall be rendered in their authorized areas. No authority for this broad assertion is cited and none has been found. This ignores provisions of statute to the contrary. It ignores the statutorily declared rights of parties contained in section 70-401, R. R. S. 1943, which are by section 70-667, R. R. S. 1943, required to be protected and preserved, as follows: "* * * all provisions of law now applicable to electric light and power corporations, * * * for any of the purposes contemplated in such statutory provisions, the manner or method of construction and physical operation of power plants, systems, transmission lines * * * as herein contemplated, shall be applicable, as nearly as may be, to districts organized under sections 70-601 to 70-672, and in the performance of the duties conferred or imposed upon them under such statutory provisions."

In enacting this statutory provision it must be pre-

sumed that the Legislature had in mind the provisions of section 70-401, R. R. S. 1943, which had been in existence without substantial change since 1923.

As pointed out hereinbefore, in enacting a statute the Legislature must be presumed to have had in mind all previous legislation on the subject. See, Nebraska Dist. of Evangelical Lutheran Synod v. McKelvie, *supra*; Placek v. Edstrom, 148 Neb. 79, 26 N. W. 2d 489, 174 A. L. R. 856; Roy v. Bladen School Dist. No. R-31, 165 Neb. 170, 84 N. W. 2d 119.

From what has been said herein it becomes apparent that the relator was entitled to the service, and it is clear that it was entitled to a writ of mandamus. Mandamus is the proper procedure to compel a public service corporation to furnish service. See Richey v. Omaha & L. Ry. & L. Co., 100 Neb. 847, 161 N. W. 575.

The judgment of the district court is affirmed.

AFFIRMED.