ANDREW VETTER ET AL., APPELLEES, V. NATHAN BROAD-HURST, APPELLANT.

FILED NOVEMBER 17, 1916.   No. 19315.

1. **Eminent Domain.** The right of eminent domain cannot be exercised for a purely private purpose.

2. ————: DISMISSAL OF PROCEEDINGS. Where, in an appeal from the dismissal of certain condemnation proceedings, it appears that the purpose of the proposed condemnation is to take a part of the land of A against his will as a site for a reservoir from which to irrigate the land of B, the proceedings being brought for B's sole benefit, a judgment of the district court dismissing such proceedings will be upheld.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE.   *Affirmed.*

*J. E. Porter,* for appellant.

*E. D. Crites* and *F. A. Crites, contra.*

LETTON, J.

This is an appeal from a judgment of the district court dismissing certain condemnation proceedings brought by

the applicant, Broadhurst, to obtain a reservoir site on the lands of defendants for irrigation purposes.

The petition to the county judge stated, in substance, that applicant was the owner of 160 acres of land, and that defendants owned an adjoining 160-acre tract; that a creek flows through the land of both, and that during the winter season and during freshets in the summer a large amount of unappropriated water of the creek goes to waste; that by its storage and conservation the same can be used in the irrigation of the lands of the applicant; that he had procured a permit from the state board of irrigation to store the flood waters; that the construction of the dam will cause water to cover five acres of land belonging to defendants, and defendants have refused to permit him to use the land for reservoir purposes or to agree as to the amount of damages. Objections were made in the county court by motion and answer, on the ground that the purpose of the applicant was to impound the water for his own private use and not for a public purpose, and for other reasons. The objections were overruled. Appraisers were appointed who viewed the premises and awarded defendants compensation in the sum of $420. An appeal was taken to the district court, where a motion was made to dismiss the proceedings on the same grounds which was at first overruled, but during the trial leave was given to renew the motion which was then sustained and the proceedings dismissed.

The sections of the statutes under which applicant asserts the right to take defendants' property are section 3444, Rev. St. 1913, which provides in part as follows: "Every person, corporation or association intending to construct and maintain a storage reservoir for irrigation or any other useful purpose, shall make an application to the state board of irrigation, highways and drainage as hereinbefore provided. * * * Upon the approval of such application the applicant shall have the right to impound any and all waters not otherwise appropriated and any appropriated water not needed for immediate use, to con-

struct and maintain necessary ditches for the purpose of conducting water to such storage reservoir and to condemn land for such reservoir and ditches in the same manner as is provided by law for the condemnation of rights of way for other ditches"—and sections 3428, 3430, 3431, Rev. St. 1913, which specify the manner of obtaining rights of way for other ditches.

The principal ground set forth in the motion, and that upon which the district court acted, is that the attempted appropriation and condemnation is not for a public purpose but for a private purpose, being for the sole benefit and advantage of the applicant, and the power of eminent domain cannot be exercised to take defendants' property for private use. Is the proposed taking for a public use? It is pointed out in 10 R. C. L. p. 25, that though some courts hold that "anything which tends to enlarge the resources, increase the industrial energies, and promote the productive power of any considerable number of the inhabitants of a section of the state, or which leads to the growth of towns and the creation of new resources for the employment of capital and labor, contributes to the general welfare and the prosperity of the whole community, and, giving the Constitution a broad and comprehensive interpretation, constitutes a public use," yet other courts have held, and the common law rule and the generally accepted doctrine is, that in order to constitute a public use the property taken must be placed within the control of the public, or of a public agency or instrumentality, and its use or the rates charged for its use be subject to public control, or it must be within the right of the public to use and enjoy. A citation of cases holding to each of these views may be found in 10 R. C. L., notes, p. 22. A full and able discussion of the whole subject may be found beginning on page 24 of the same volume, and in 1 Wiel, Water Rights (3d ed.) sec. 606. The proper limits of this opinion lead us to refer the reader to these articles and the authorities cited therein. One of the clearest statements justifying the doctrine that a public advantage or benefit—the gen-

eral welfare, to use another term—may justify the taking of private property against the consent of the owner is given in the opinion by Mr. Justice Peckham in the case of *Clark v. Nash,* 198 U. S. 361, 4 Am. & Eng. Ann. Cas. 1171. In that case it was held by the supreme court of Utah that on account of the peculiarly arid climate of Utah, where agriculture is practically impossible without irrigation, the use of water, even by a private owner, for agricultural purposes was a public use, and was of such value to the commonwealth that a statute permitting condemnation of the right of way for a ditch for the use of a private individual was not unconstitutional. This was upheld by the supreme court of the United States. The opinion, after saying that probably in most states the contention of plaintiff in error would be sound, proceeds: "Where the use is asserted to be public, and the right of the individual to condemn land for the purpose of exercising such use is founded upon or is the result of some peculiar condition of the soil or climate, or other peculiarity of the state, where the right of condemnation is asserted under a state statute, we are always, where it can fairly be done, strongly inclined to hold with the state courts, when they uphold a state statute providing for such condemnation. The validity of such statutes may sometimes depend upon many different facts, the existence of which would make a public use, even by an individual, where, in the absence of such facts, the use would clearly be private. Those facts must be general, notorious, and acknowledged in the state, and the state courts may be assumed to be exceptionally familiar with them." And again: "But we do not desire to be understood by this decision as approving of the broad proposition that private property may be taken in all cases where the taking may promote the public interest and tend to develop the natural resources of the state. We simply say that in this particular case, and upon the facts stated in the findings of the court, and having

.reference to the conditions already stated, we are of opinion that the use is a public one."

It is practically on the same principle that the Maine, Massachusetts, New Hampshire, and Connecticut milldam statutes were held to be constitutional, although there is no doubt that these decisions were largely influenced by the facts that such legislation had been in force in the colonies long before the Revolution, and that the Constitutions of those states must have been adopted in view of the ancient customs and general state policy as shown by former and existing statutes.

Tested by the criteria laid down in the Utah case, is there such a peculiar condition of the soil or climate, or is there any other peculiarity of circumstances in Nebraska, which would justify the taking of the land of one farmer for the benefit of his neighbor. There is a vast difference between the physical configuration and the climatic conditions of the state of Utah, of other states in the arid region of the United States, and of the rocky New England states, and the physical configuration, climate and soil of the state of Nebraska. According to the United States census report of 1910, that part of Utah in which the heaviest rainfall prevails has about the same amount of precipitation. as the very driest and most arid portion of the state of Nebraska, viz., 16 inches per annum, while in the driest portion of Utah only about 7 inches of rain falls in a year. The rainfall in Nebraska varies from over 32 inches in the extreme southeastern portion to about 16 inches in the extreme western portion. The general feature of the state is that of a rolling plain, sloping upward from the Missouri river to its western boundary. The elevation above the sea level varies from 842 feet in Richardson county in the southeast to over 5,000 feet in the extreme northwest corner of the state. In the eastern portion of the state the public welfare requires the construction of drainage ditches to carry off the surplus waters, while in the valleys of the extreme western portion irrigation is necessary to agriculture.

Taken as a whole, the state of Nebraska is one of the richest agricultural states in the Union. Its crops are shown by official reports to be of such magnitude that many million dollars worth are exported every year. It is "a land flowing with milk and honey," far surpassing the land shown the messengers from Israel. In 1915 the state produced over 71,000,000 bushels of wheat, over 73,000,000 bushels of oats (Bulletin 33, Nebraska Department of Labor), and over 230,000,000 bushels of corn and other grain. This vast yield was produced upon 15,293,335 acres of cultivated land, of which only 230,848 acres were under irrigation. Bulletin 166, Nebraska Board of Agriculture. The argument from necessity fails in the face of such facts.

But similar questions have already been adjudicated in this state. This court has held that condemnation cannot be availed of to take the property of another for a private road, so as to permit one whose lands are wholly inclosed or surrounded by the lands of others to have access to a public highway. *Welton v. Dickson,* 38 Neb. 767. It has also been held that a statute providing that not less than three owners of wet lands may form a corporation to drain the same, and providing for condemnation of a right of way for a ditch, for such purpose, was unconstitutional, the opinion saying: "Any number of persons, not less than three, being the owners of wet and overflowed lands, whenever it is for their interest, may locate a ditch across the lands of others. There is no requirement in the act that the corporation shall act only in cases where the public welfare would be advanced. And there are no conditions upon which their right to locate a ditch depend, except that they are the owners of wet or overflowed lands. A ditch may be located and opened across the lands of individual owners merely to subserve private interests. Three individuals, by forming a corporation, may locate and open a drain across the property of others without their consent, and compel them to bear the burden of constructing the same. This is an infringement of the right of private property, and is

unauthorized and void." *Jenal v. Green Island Draining Co.,* 12 Neb. 163, 167. In *Paxton & Hershey Irrigating Canal & Land Co. v. Farmers & Merchants Irrigation & Land Co.,* 45 Neb. 884, it was declared: "Public use, in a constitutional sense, may be confined to the inhabitants of a restricted locality or neighborhood, but the use must be common, and *not to a particular individual.*"

Furthermore, the statute under which the applicant asserts the right to take his neighbor's land allows condemnation for other purposes than irrigation. If this section is valid, then any one who desires to use water for power to run a private factory, or for any other private use, may condemn the land of his neighbor for a reservoir site and for ditches. In *Traver v. Merrick County,* 14 Neb. 327, the status of water grist-mills in this state was examined, and, upon a consideration of the statute allowing such mills the right to flow the lands of others, it was held that, since the tolls charged by such mills were subject to public control, such mills were works of internal improvement under the statute allowing counties to vote bonds in aid of such works.

In *State v. Adams County,* 15 Neb. 568, it was held that bonds could not be voted in aid of a steam grist-mill, and it was said: "But for the provisions of the statute authorizing the exercise of the power of eminent domain in behalf of water-mills, and thereby placing their regulation under legislative control, they would not be held to be works of internal improvement."

The right of eminent domain is thus held to rest on the right to control of rates by the public. But we are not alone in this view. In *Ryerson v. Brown,* 35 Mich. 333, in an interesting and able opinion by Chief Justice Cooley, the earlier cases in this country, are reviewed, and it is held that a statute permitting the exercise of the right of eminent domain to flow lands of others for water-power purposes for private use is unconstitutional and void.

The operation of a general statute covers the state. The taking of property for the use of another cannot be

lawful and proper in the western portion of the state, and unlawful and wrongful in the eastern portion. There is no condition, there is no necessity, there is no prevailing public opinion or sentiment or demand over the greater portion of the state for any such invasion of the right of private property. Even if it should be held that a great and general public advantage may in some cases constitute a public use, we take judicial notice of the fact that neither climatic, agricultural, industrial or social conditions in this state indicate that any such advantage will accrue by permitting such a taking as this statute authorizes.

It may be thought to be rather an artificial distinction to say that an irrigation district, or a canal company created to furnish water to landowners for agricultural purposes for compensation, may exercise the right of eminent domain, but that a private owner of a single tract of land may not have such a privilege. But this difficulty rests on the nature of the matter. Such agencies are in a sense common carriers of water, and the right of control and of regulation of rates exists in the public, so that all courts would agree that such agencies are formed for a public purpose. If a carrier of goods only carries one package of goods, but offers to carry for all, the public is interested, but if he carries for himself alone the public has no concern with his business.

It is not intended by this opinion to declare that the sections of the statutes mentioned are null and void *in toto* as in violation of the Constitution, but only to declare that they cannot, with due regard to the right of private property, be applied to circumstances in which a merely private interest is subserved.

The taking of defendants' property against their will under such proceedings is without due process of law and cannot be justified. The judgment of the district court is therefore

AFFIRMED.

FAWCETT, J., not sitting.