359 N.W.2d 100 (1984)
218 Neb. 777
CHIMNEY ROCK IRRIGATION DISTRICT, a public corporation, Appellee and Cross-Appellant,
v.
FAWCUS SPRINGS IRRIGATION DISTRICT, a public corporation, Appellant and Cross-Appellee.
No. 83-832.
Supreme Court of Nebraska.
December 7, 1984.
*101 Steven C. Smith of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, Gering, for appellant.
Clark G. Nichols of Winner, Nichols, Douglas & Kelly, Scottsbluff, for appellee.
KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, District Judge, Retired.
CAPORALE, Justice.
Defendant-appellant, Fawcus Springs Irrigation District, instituted a proceeding in the county court to condemn certain land owned by plaintiff-appellee, Chimney Rock Irrigation District. On appeal by Chimney Rock the district court dismissed the proceeding. Fawcus Springs appeals that judgment of dismissal to this court, assigning as error the district court's finding that the taking was for a private rather than a public use, and further claiming that, in any event, the district court lacked jurisdiction to adjudicate the matter. Chimney Rock cross-appeals with respect to certain of the district court's other specific findings of fact. We affirm.
This case was spawned by our holding in Schmidt v. Chimney Rock Irrigation Dist., 209 Neb. 1, 305 N.W.2d 888 (1981), that Robert L. Schmidt had no right to flow water "under or over or across" land owned by Chimney Rock in fee simple and on which Chimney Rock maintains an irrigation canal. Following that decision, Schmidt conveyed, without consideration, approximately 15 acres each of land owned by him to his sister, father, and son. Schmidt retained the remainder of his land. Schmidt's grantees then duly formed Fawcus Springs Irrigation District under the provisions of Neb.Rev.Stat. §§ 46-101 through 46-128 (Reissue 1978), which district also encompasses the land retained by Schmidt. Thereafter, Schmidt's father, as one of the directors of Fawcus Springs, appeared before Chimney Rock seeking a right-of-way across a strip of land containing Chimney Rock's irrigation canal, which canal separates the land in Fawcus Springs from its water supply.
After Chimney Rock refused to deal with Fawcus Springs, Fawcus Springs exercised its power of eminent domain to acquire Chimney Rock's land in order to build its right-of-way. After an award of damages to Chimney Rock by the condemnation appraisers, Chimney Rock appealed to the district court, claiming, among other things, that the taking was not for a public use but, rather, for the private benefit of Schmidt.
Constitutional limitations permit the power of eminent domain to be exercised only where the taking is for a public use, just compensation is paid, and due process of law has been observed. Father Flanagan's Boys' Home v. Millard School Dist., 196 Neb. 299, 242 N.W.2d 637 (1976).
The core of Fawcus Springs' argument that the taking was for a public use is that § 46-128 declares it to have been such and that this court has recognized that fact in Vetter v. Broadhurst, 100 Neb. 356, 160 N.W. 109 (1916). Section 46-128 provides:
The use of all water required for the irrigation of lands of any district formed under the provisions of sections 46-101 to 46-128, together with canals and ditches already constructed, the rights-of-way for canals and ditches, sites for reservoirs and pumping plants, and all other property required in fully carrying out the provisions of sections 46-101 to 46-1, 111, is hereby declared to be a public use, subject to the regulation and control of the state in the manner prescribed by law.
In Vetter this court refused to permit a landowner to condemn his neighbor's land in order that the condemnor might store water from a creek to irrigate his own ground. The court held that the condemnation statutes concerning impounding water could not, "with due regard to the right of *102 private property, be applied to circumstances in which a merely private interest is subserved." Id. at 363, 160 N.W. at 112. In so holding, however, the court observed:
It may be thought to be rather an artificial distinction to say that an irrigation district, or a canal company created to furnish water to landowners for agricultural purposes for compensation, may exercise the right of eminent domain, but that a private owner of a single tract of land may not have such a privilege. But this difficulty rests on the nature of the matter. Such agencies are in a sense common carriers of water, and the right of control and of regulation of rates exists in the public, so that all courts would agree that such agencies are formed for a public purpose. If a carrier of goods only carries one package of goods, but offers to carry for all, the public is interested, but if he carries for himself alone the public has no concern with his business.
Id.
Fawcus Springs takes a great deal more comfort from § 46-128 and the above-quoted obiter dictum of Vetter than is warranted by the facts of this case. Section 46-128 does no more than provide that land necessarily taken to benefit an irrigation district is taken for a public use. The statute does not undertake to adjudicate under what circumstances land has been taken to benefit an irrigation district and under what circumstances land has been taken to benefit a private interest. Indeed, this court has previously held that whether the use for which property is taken is public or private in nature is a judicial question and not a legislative one. Burger v. City of Beatrice, 181 Neb. 213, 147 N.W.2d 784 (1967). In making that determination "the facts of the particular case must be subjected to close examination." Id. at 222, 147 N.W.2d at 790. Although the Vetter dictum does imply that an irrigation district might, under some circumstances, do what an individual would not be able to do, the court was not adjudicating, as it must in this case, whether an irrigation district had improperly exercised its power of eminent domain.
It is clear from the evidence, and was conceded by Fawcus Springs in oral argument, that the sole purpose of forming Fawcus Springs was to obtain and exercise the power of eminent domain for Schmidt's own benefit. One of Schmidt's neighbors testified Schmidt told him that he (Schmidt) would have no problem getting water over or under Chimney Rock's canal, since he was going to "form a ditch company and condemn a right-of-way through there...." The neighbor also testified that at meetings of the county commissioners and before the Board of Educational Lands and Funds, Schmidt was either the primary spokesman for Fawcus Springs or was the person with whom Fawcus Springs' attorney consulted. Also, when Schmidt's father no longer wanted to be on the Fawcus Springs board, he conveyed, without consideration, the tract of land previously given to him by Schmidt to Schmidt's sister's father-in-law. Schmidt's father did not list the land with a realtor "because nobody would want 15 acres by itself." The reason given by Schmidt's father for not giving the land back to Schmidt was that Schmidt "couldn't be on the ditch board and we had to have three people on the ditch board."
This jurisdiction has long been committed to the principle that a private use is not converted into a public one merely because a number of individuals band together to do what a single individual could not do. Jenal v. Green Island Draining Co., 12 Neb. 163, 10 N.W. 547 (1881), struck down a statute allowing three or more individuals to form a corporation which would have the power to construct structures across lands owned by others for the purpose of reclaiming wet or overflowed lands without reference to whether the public welfare, as contrasted with the private benefit of the organizers of the corporation, would be served. The Jenal court stressed that
[t]he legislature possesses no authority, however, to take the property of one *103 citizen and transfer it to another, even where full compensation is made.... The statute in question authorizes the entry upon lands and construction of drains, whenever the private interest of the corporation requires it, and without reference to the public welfare.... Three individuals, by forming a corporation, may locate and open a drain across the property of others without their consent, and compel them to bear the burden of constructing the same. This is an infringement of the right of private property, and is unauthorized and void.
Id. at 166-67, 10 N.W. at 548.
The real issue in this case, therefore, is whether form is to triumph over substance. That substance is the controlling consideration is established by Burger v. City of Beatrice, supra, wherein we quoted from State ex rel. Dominick v. Superior Court, 52 Wash. 196, 100 P. 317 (1909): "`Courts look to the substance rather than the form, to the end rather than to the means. If in the end the property is devoted to a public use, the mere agency or instrumentality through which that result is accomplished is a matter of no concern.'" Burger v. City of Beatrice, 181 Neb. 213, 223, 147 N.W.2d 784, 791 (1967). Conversely, if in the end the property taken is devoted to a private use, the same rationale applies, as shown in Burger. In refusing to allow the city of Beatrice to take easements over privately owned land in order to install wells and withdraw water so as to benefit private businesses located outside the city limits, the Burger court stated that a broad definition of public use would not be adopted "in condemnations for drainage ditches, irrigation works, reservoirs, dams, and the like." Id. at 221, 147 N.W.2d at 790. That court also observed:
The improper exercise of the power of eminent domain is an infringement upon a citizen's constitutional right to own and possess property. It is essential therefore that the exercise of the power of eminent domain be in strict accordance with its essential elements in order to protect the constitutional right of the citizen to own and possess property against an unlawful perversion of such right. The authorities are in agreement that a taking of property under the power of eminent domain must be for a public purpose and that it may not be taken for a private one.
Id. at 220, 147 N.W.2d at 789-90.
The Burger court then concluded:
[T]he attempt of Beatrice to take the easements on plaintiffs' lands by eminent domain, insofar as the use by Phillips and Cominco [the two businesses outside the city limits] is concerned, is an attempt to obtain private property against the will of the owners for a private purpose, even though for compensation, under the guise of an exercise of its power of eminent domain. This it cannot do.
Id. at 224, 147 N.W.2d at 792.
We recognize that a factual distinction exists between Burger and the instant case, in that in Burger the city sought to condemn private land outside its borders to benefit private businesses also located outside its borders, whereas in this case Fawcus Springs seeks to condemn land outside its borders to benefit one with an interest in land within its borders. Nonetheless, the Burger rationale is apposite. The city of Beatrice was, as is Fawcus Springs, a lawful entity possessing the power of eminent domain. The fact which defeated the city of Beatrice is the fact which defeats Fawcus Springs; the taking in both cases was to benefit private rather than public interests.
Fawcus Springs' first assignment of error is without merit.
As to the second, or jurisdictional, issue, Fawcus Springs relies on the ruling in Osborn v. Village of Oakland, 49 Neb. 340, 68 N.W. 506 (1896), that quo warranto is the exclusive means of challenging the legal existence of a public entity. That ruling, however, has no application to this case. The question presented is not whether Fawcus Springs is in legal existence, but whether it validly exercised its power of *104 eminent domain. In State ex rel. Tomek v. Colfax County Reorganization Committee, 190 Neb. 447, 209 N.W.2d 188 (1973), we held that, generally, quo warranto will not lie to challenge an improper exercise of a conferred power, although such irregularity may be sufficient, when tested by other means, to void the act done. Chimney Rock chose a proper means of challenging Fawcus Springs' exercise of its power of eminent domain.
The record failing to sustain either of Fawcus Springs' assignments of error, we affirm. Such disposition makes unnecessary any consideration of the issues presented by Chimney Rock's cross-appeal.
AFFIRMED.
WHITE, J., not participating.
KRIVOSHA, Chief Justice, dissenting.
I must respectfully dissent from the majority opinion in this case. Although the majority opinion acknowledges that the Fawcus Springs Irrigation District was duly formed under the provisions of Neb. Rev.Stat. §§ 46-101 through 46-128 (Reissue 1978), it nevertheless holds that in an appeal from a condemnation action the court may look behind the establishment of the district. While the district, on its face, appears to have been validly created, the majority holds that, in fact, it may not possess the powers granted to such duly created districts because a single individual benefits from the district's exercise of its lawfully given power.
The evidence is undisputed that the Fawcus Springs Irrigation District was lawfully created and, as such, has been given authority to condemn private property for public use after complying with the requirements of law. Those who objected to the creation of the Fawcus Springs Irrigation District, including Chimney Rock Irrigation District, had an opportunity to appeal from the order creating the district at the time of its formation. Having elected not to do so, it should not now, in a proceeding involving the district's exercise of eminent domain, be permitted to contest the validity of the district. It has long been the law in this jurisdiction that the judgment of a county board establishing an irrigation district cannot be collaterally attacked as to those matters by statute committed to the consideration, investigation, and determination of the board. See State v. Several Parcels of Land, 80 Neb. 424, 114 N.W. 283 (1907). The majority is simply in error when it suggests that the real issue in this case "is whether form is to triumph over substance." The real issue in this case is whether an irrigation district, lawfully created and empowered by the Legislature to exercise the right of eminent domain, can have that authority stripped from it by collateral attack when the district seeks to exercise the authority granted to it by the Legislature.
No one contends that the statutes creating irrigation districts are in any manner invalid and that, once created, the district cannot exercise the right of eminent domain, nor does anyone contend that the Fawcus Springs Irrigation District is not a valid, lawful, public corporation, having the power of eminent domain. Yet the district is denied the right to exercise the power of eminent domain in order to obtain water for the district because the majority says the taking is not for a public purpose.
Section 46-128 specifically provides that the use of all water required for the irrigation of lands of any district formed under this act is declared to be a public use, subject to the regulation and control of the state in the manner prescribed by law. While we recognize that the mere fact that the Legislature declares something to be a public purpose does not, in and of itself, foreclose any further examination, we believe that such declaration should not be lightly set aside, absent some violation of constitutional law.
Apparently, the basis for concluding that the action of this district must be set aside is because a single individual owning the majority of the land within this 270-acre district is the only individual benefiting from the water, and therefore the right of eminent domain cannot exist. No authority, *105 however, is cited in support of that position, and, in fact, the number of individuals who may benefit from a particular public project is in no manner controlling. As noted by the U.S. Supreme Court in the case of Rindge Co. v. Los Angeles, 262 U.S. 700, 707, 43 S.Ct. 689, 692, 67 L.Ed. 1186 (1923), "It is not essential that the entire community, nor even any considerable portion, should directly enjoy or participate in any improvement in order to constitute a public use." And the Supreme Court of South Carolina, in Young v. Wiggins, 240 S.C. 426, 434, 126 S.E.2d 360, 364 (1962), noted:
It is of no legal significance that the organized district involves some twenty landowners. The constitutional prohibition applies to the same extent as though there were only three owners, of whom two favored the lake and one opposed it. The character of the use, whether by individuals or by members of the public, rather than the numbers of users, is controlling.
Further, in State v. Buck, 94 N.J.Super. 84, 88-89, 226 A.2d 840, 842 (1967), the New Jersey court said:
A use is not denominated public or private by simply relying upon the number of persons it serves.... It has been stated that a use does not "fail to be public upon the ground that the immediate enjoyment of it is limited to a small group or even to a single person." United States v. Boyle, 52 F.Supp. 906, 908 (N.D.Ohio 1943), affirmed sub nom. City of Cleveland v. United States, 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274 (1945). Accord, Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 161-162, 17 S.Ct. 56, 41 L.Ed. 369, 389-390 (1896).
The fact that in the instant case the irrigation district benefits only one person does not change the fact that the use of water for irrigation purposes in Nebraska by an irrigation district is a public use and that a duly created irrigation district has the lawful authority to condemn land in order to obtain water, even though only a single individual is benefited. That is the very holding in Vetter v. Broadhurst, 100 Neb. 356, 363, 160 N.W. 109, 112 (1916), wherein we said:
It may be thought to be rather an artificial distinction to say that an irrigation district, or a canal company created to furnish water to landowners for agricultural purposes for compensation, may exercise the right of eminent domain, but that a private owner of a single tract of land may not have such a privilege. But this difficulty rests on the nature of the matter. Such agencies are in a sense common carriers of water, and the right of control and of regulation of rates exists in the public, so that all courts would agree that such agencies are formed for a public purpose.
As noted in 26 Am.Jur.2d Eminent Domain § 31 at 679 (1966):
It is a generally recognized principle that the public nature of a project, as warranting the exercise of eminent domain, cannot be made to depend on a numerical count of those to be served or the smallness or largeness of the community to be benefited. Therefore it is settled that a use may be public even though it will be enjoyed by a comparatively small number of people.
So adamantly do we, as a state, feel about the matter of water and its use, we have devoted four sections of our Constitution to the matter of water and the people's right to divert it and use it. Article XV, § 4, of the Constitution of the State of Nebraska acknowledges that water for irrigation purposes is a natural want. And § 5 of article XV of the Constitution of the State of Nebraska declares that the water of every natural stream is dedicated to the people of the state for beneficial purposes.
What we are in effect saying by the majority opinion herein is that the right of this irrigation district to exercise its duly granted power of eminent domain must be denied because the driving force behind the creation of the district was too clever and followed the law to the letter. If the Legislature wishes to prohibit such an occurrence from arising in the future, it may *106 make whatever constitutional, reasonable restrictions it wishes on the formation of a district. But the Legislature's having described how that district should be created and, once created, what powers it should have, it should not be for this court to look behind those provisions and determine that the district is not entitled to the rights granted to it.
In my view, the decision of the district court was in error and should have been reversed.
BOSLAUGH, J., joins in this dissent.